Are you ready to begin? I am. Please proceed. Okay, Judge Hartz, and may it please the court. This case involves vehicle protective search under Supreme Court's decision in Michigan v. Long. That's sort of an undeveloped area of the law. There aren't many cases on it. We think there's two problems with the district court's order. There's two prongs to Michigan v. to the vehicle prong. We think there are problems under both prongs. The first prong analysis is a little more complicated than we had hoped because there's a debate about what the district court's order actually means, I guess. The government thinks it means something that we don't. So there's that going on other than the underlying issue. And so what I was going to do was just skip to the second prong real fast to see if we could knock that out if anybody has any questions on that. And my basic point on the second prong is that it requires the government to prove that there is a reason to believe that the individual will re-enter the vehicle. And obviously that can be proven based on the traffic stop ending and the defendant being released to the vehicle. The problem in this case is that the government didn't prove that. In fact, it disproved that. So if we look at the actual record in the case, we know that there's actually record evidence that the officers didn't know at the time that they searched the vehicle whether they were going to release Mr. Alexander to the car afterwards. At page four of the transcript where Alexander and Officer Henry are talking, Officer Henry says to Mr. Alexander, quote, as long as you ain't got any warrants, maybe I'll just cut you a ticket and get you out of here. All right. I mean, that's a clear recollection that at that point, Mr. Alexander isn't going anywhere. He's not getting in that vehicle unless he doesn't have a warrant. And so our basic point is that the government's position here just reads long second requirements out of existence. I mean, if we can just... Mr. Hansmeier, what about the alternative argument that the government has raised? Hasn't our circuit already essentially read out of existence the second prong by allowing this second prong to be satisfied under a theory that if the defendant had broken away while he is being questioned, while he is being detained under the Palmer case, the Dennison case, how do we avoid those precedents? Well, you don't have to... No, I... Yeah, I'm sorry. No, I completely agree that that is another way the government can satisfy long. Absolutely, the government can prove that if an individual breaks away and has access to the vehicle. The problem the government has in this case is that Judge Melgren made a factual finding directly contrary to that. So, you know, at the hearing, after the end of the hearing, Judge Melgren says, factually, Mr. Alexander did not have access to that vehicle. And so the government, I think, would have to come to this court and argue that that was clearly erroneous, that that finding was clearly erroneous. And it hasn't done that. So I think that's absolutely true. In most cases, the government is going to meet its burden on this prong based on the break away from police control theory. The government's problem here is that it made that argument and Judge Melgren expressly rejected it. And we don't think that's clearly erroneous. I mean, when you look at the facts, Officer Henry is standing right over Mr. Alexander. While this is going on, it wasn't clearly erroneous for Judge Melgren to say, he can't, he's not going to have access to that vehicle. He's just, he cannot, he cannot access that vehicle. So we really think that based on that finding, and based on the other evidence in the record, that this is a case where the government hasn't met the second prong. And this court, you know, shouldn't read the prong out of existence. But with that, I mean, that would resolve this case. I can move to prong one, prong one, little. So there's a debate about what the district court's order means. And that's fine, I think, because it's so short, it doesn't really say anything. Now, what it does say, though, is that the district court is using two things to determine reasonable suspicion. And it's considering the totality of the circumstances, but two facts, that's it, two facts establish reasonable suspicion. That's how we read the order. And by reading it that way, we think, by considering the totality of the circumstances, the other facts the government relies on, the district court implicitly rejected. We think that's a concept that is used by this court in cases where district courts' orders are thin. I mean, you can think of the sentencing context where a court, you know, doesn't say anything about a defendant's downward variance motion. And this court just says that just means the court rejected it. We don't need something explicit. Same thing. I mean, if the district court says, I've considered the totality of facts, I don't think those facts do anything for this analysis. And so really, it's an easy question, we think. Is it okay for a district court to say, just prior criminal involvement, prior criminal history, does that, is that enough to satisfy, to establish reasonable suspicion? And we think this court's case law is crystal clear on this, that it's not. And that makes all the sense in the world. I think it's the Garcia case, doesn't it say that where you have an armed robbery, where a court has said, prior criminal history involving the use of a weapon can be utilized, you know, to find reasonable suspicion of dangerousness. How do you deal with it? I think maybe misremembering the name of the case, the Garcia case. Well, we, I completely agree that it is a factor. I'm not saying the court can't consider it. Absolutely, absolutely a court can consider, officer should consider. It is absolutely one of the totality of the circumstances that goes into the analysis. Our only point is that it can't be the only thing. It can't be the sole thing, because if it is, I mean, that means, I mean, you can never change your past. Matthew Alexander will always be a convicted felon. He will always have a prior arrest for aggravated battery. He will always have all of these things. He can't change them. So if that's it, if that's all that it takes, what that means is any time Matthew Alexander commits a minor traffic violation, his car is going to get searched. And we all know that it's impossible to drive without committing a minor traffic violation. So, I mean, there has to be more. And I think that is absolutely what this court has said over and over. Now, it might not be much, okay? I mean, I completely acknowledge you have cases like Garcia, you have cases like this. I mean, I completely agree with what this court has said. Under certain circumstances, an officer has to turn his back, sparsely populated, you know, all of the totality of the circumstances. Maybe you don't need much more. But you can't just say, based solely on prior criminal history, that that's reasonable suspicion. And we think it is plain from the district court's order that that's what it did. And that is... I thought, didn't the judge refer to the totality of the circumstances at the outset of the statement? Absolutely. And I think that helps us because that shows that the circumstances were considered, but they weren't credited. Why is that? I'm not sure that's a... I would think that's not a reasonable interpretation. The judge is saying, look, I considered all the circumstances. He mentioned some, but he also specifically mentioned the officer had prior personal encounters with the defendant. I think you're parsing the language of the court's order, and rather drawn to this view. Well, that's just my... I'd like to hear your response to that. I completely disagree. I mean, I think if you put yourself like in the sentencing context, and you're talking about a defendant who's saying, you didn't consider my mitigating arguments. And the record is clear that the court said, I considered all of the 3553A factors, but there's no specific reference to those mitigating arguments. I mean, this court isn't going to reverse. It's going to say, well, the court didn't give you the sentence you wanted, and therefore you lost and you lose. The thing with this order is, there is no... The things that the government relies... That the government needs to show more than past, right? We need more than the past. So what do we have? We have the evasive driving, apparently. We don't agree that there was any evasive driving. If you look at that five page order, there is nothing in that order about evasive driving. His only factual findings is that the officer that he pulled into the Hardee's restaurant and the officers followed him and pulled him over. So there's nothing... There's no... I mean, I don't know how I have a jaundiced view of the record when the district court doesn't say anything about the things the government needs. I mean, I think it's... So let me understand. So you're saying it can't be based on the person's at the time of the encounter. Otherwise, you can't make a determination that this person is dangerous. Is that what you're saying? I think that's what... I think that's exactly what this court's precedents say. I do think there is one sort of exception. That's remarkable. I don't... So no matter what the person has done in the past, that's not... That's not enough for you to find dangerousness. I have a lot of sympathy with your argument that any time they want to search his car, take a sweep of his car, they just follow him and there'll be a traffic offense. That has more to do with the wide open nature of traffic offenses than it does with the principle of dangerousness, though. I can see that there needs to be something done there, maybe through legislation. I don't know. You mentioned something that's very troubling, but I don't think the cure is to say that you can't determine someone is dangerous based on a history of a worse cure. Well, I don't think you need to say... You've already said it. I mean, that's what this court has said just recently in Hammond. It said, standing alone, a criminal record is not reasonable suspicion of anything. Of anything means of anything. Well, that wasn't determined by this reasonable suspicion that the person was committing a crime, right? Well, it also... But this is a quote. This is a quote from Hammond. A person suspected or convicted of an armed crime in the past may not be indiscriminately stopped and frisked on the basis of his criminal history and gang affiliations. Stopped and frisked. Okay, this is essentially the frisked context. You can look at United States v. Davis, the 1980s... Well, if it said stop or frisked, it would be more persuasive to me, but the fact of the matter is that was a different context and our decisions have to be read in context. When that opinion was written, the court was not focused on the issue we have here about whether someone could be considered dangerous based on history. But to say that you can't determine someone is dangerous based on that person's history is just so contrary to common sense. I don't see how it can be a violation of the reasonableness requirement of the Fourth Amendment. Well, I'll reserve the remainder of my time briefly. If you're not going to respond to that, let me ask you a question about something else. I was going to reserve my time and respond, but... Well, yeah. I mean... Well, go ahead and quickly respond. Okay. Okay. I mean, again, I don't know how you read your cases any different. I mean, I don't think you can find one case from this court that has said a defendant's prior criminal record history is enough. The only sort of exception is the idea of a recent crime. That's Leyva Serrano. So you have a suspect in a recent crime. That's obviously... That makes all the world. That's not this case. I mean, this is strictly prior criminal history that a defendant can't change in that. So that, I don't... I mean, if it's remarkable, it is the law. Okay. Let me ask you about something you said on the first problem. You said the court found that, I'm sorry, that the defendant could not have access to the car. That was in the course of asking questions of the prosecutor and hearing the argument. Are you saying that any comment made by a judge in the course of exploring the issues and listening to the argument binds the court later on, even though the court may say something to the country finally? Well, again, I'm not saying that. That's what this court has said. The case is cited in a brief. It starts with a T. You're saying our court has said that comment made by the judge in the course of questioning binds the court to that position no matter what the court states later on? Yeah. I mean, the case is PAP. It's the United States v. PAP. It's in the brief, and this court has said you can interpret a district court's order based on its findings at the suppression hearing. I mean, the thing is, the order doesn't say that either. The order says he would have access to the vehicle when the stop ends. I mean, Judge Milgren really... I mean, if you read the order, he really didn't think that he had access to the vehicle during the traffic stop, and there's nothing clearly erroneous about it. Okay. Thank you. Thanks. Mr. Hushka? Good morning, Your Honors. May it please the court, Ronnie Hushka, appearing on behalf of the United States. I think it's important first to put the circumstances of this case into context since it's a traffic stop, and that presents unique Fourth Amendment issues. The Supreme Court has said that these traffic stops are especially fraught with danger, and that risk is at its height at the time of the initial confrontation. And in Holt, this court noted that officers face inordinate risk in these situations, and when they approach a vehicle, the officer has an objective and reasonable basis to fear for his or her life. So that's the starting point. That statement in Holt means something. It demonstrates that these stops are inherently dangerous part of a police officer's job. So when an officer pulls a vehicle over, that's the starting point. And in this case, you add to that the situation that the officers were in. They did not receive some general vague criminal background relayed over a radio or from some information system with someone with whom they had never interacted. It was much, much more than that. They knew that the defendant had an extensive criminal record. And a violent one. Not just a record of unlawfully possessing firearms, but actually using those firearms. Counsel, can I just stop you before you go on? So do you think that it is not permissible to look at the circumstances that led to the stop, the quote-unquote evasive behavior? I mean, you basically said we start when the stop happens. So I'm wondering if we can if you think we can look at anything that happened before that. Thank you, Your Honor. That's a very good point. And we talked about this in our brief, but yes, we do believe that the evasive maneuvers prior to the officer's point, the defendant can be considered and should be considered. We cited a number of cases that talk about how that is a valid factor that this court can consider. The point I was making was simply that when the officer approaches a vehicle in a traffic stop, they have an objective basis to fear for their life. But in this case, they had even more than that because they have a situation where they're approaching a vehicle that they have reason to believe clearly did not, would have preferred to not have an interaction with them that day if he could help it. And I want to be clear, we're not saying that this necessarily adds a lot to reasonable suspicion of danger. And certainly, we would concede that it wouldn't be sufficient by itself, but it does add something and is part of the totality of the circumstances that should be factored in. So you have that. Can I, since you mentioned the totality of circumstances, could you address your opponent's argument that the judge said totality of circumstances, but only looked at two circumstances because the others weren't mentioned? I mean, I think there are two points on that, Your Honor. I think the first is what the district court considered. And we frankly just disagree. We think that the judge after the suppression hearing said it was considering the totality of the circumstances, and we think that that's accurate. But I also want to note that the court specifically mentioned that it was in the background, in the fact section, that Officer Henry had prior personal encounters with the defendant. It noted that the defendant had a prior felony conviction. The district court noted the history of unlawful firearms possessions, an arrest for aggravated battery, and that he had been violent in the past. And all of the testimony that the officer, that the district court heard regarding the defendant's potential involvement in a homicide, regarding the defendant's kind of volatile, aggressive actions, regarding the defendant's gang affiliation, all of that certainly could be encompassed in having a violent past. But regardless of what the district court specifically mentioned, whether it used the magic words in the order, this court, of course, reviews de novo. And if those are valid factors, this court can consider them on appeal, and we submit should consider them. So you had all of these factors in totality in this case. And whether any one of these factors by itself or some subset of those factors would be sufficient is not something this court has to decide. They were all valid factors. And I want to note, too, that much of the cases that, in language that the defendant cites regarding criminal background alone, they're almost all in the inapposite context of a reasonable suspicion to conduct an investigative detention, to stop somebody and pull them off the street. Not whether there's reasonable suspicion to believe that a person is armed and dangerous, and that is a separate inquiry. For instance, in Wood, and again, although these are investigative detention cases, the criminal background pales in comparison to what the officers were facing in this case. In Wood, that was investigative detention, and the trooper only knew that the individual had a narcotics check based on computer, narcotics record based on computer checks. In Loughran, the officers followed and saw no traffic infractions, but still, nevertheless, stopped them based solely on knowledge of a prior driving record, and investigative detention was at issue in that case. In Sandoval, the trooper knew only the driver had been involved in some type of hit and run, and had been arrested but not convicted for a narcotics violation five years earlier. The question was whether that was sufficient to detain him, to pull him off the street. And then in Johnson, which is a Seventh Circuit case that the defendant cites, again, another investigative stop case that involved an uncorroborated anonymous tip with nothing else, and the government in that case conceded that that didn't constitute reasonable suspicion to investigate, to stop, and to detain on the basis of criminal activity. You deal with Mr. Pansmeier's argument, and maybe, I don't know if this is his argument, or just a question. You know, in terms of distinguishing the investigative detention from the reasonable suspicion of dangerousness, when Officer Henry, in this case, specifically knows that the defendant has a prior conviction, obviously, he knows under 922 G1 that it would be a felony for him to be in possession of a firearm. So, in a situation like ours, where the officer happens to testify that he knew that the defendant had a prior conviction, the reasonable suspicion of dangerousness and of criminality intersect. And so, why wouldn't the logic of those investigative detention cases apply in a situation where the reasonable suspicion would be for both, because of the nature of Officer Henry's knowledge of the defendant? Well, I think, to some extent, Your Honor, it's the timing of everything in this case. Officer Henry doesn't know at the time he stops the vehicle that it's Mr. Alexander in the vehicle. But he certainly does when there's a protected sweep of the vehicle, and that's the operative point, right? That's the operative time. Yes, Your Honor, that's correct. And that's obviously the point at which he determines it necessary to conduct a protective sweep when he realizes that Mr. Alexander is, in fact, the person they pulled over. And certainly, the reasonable suspicion standard is the same. In other words, the standard is that it needs to be specific, it needs to be articulable, it can't be based on a hunch. And that's the same whether we're talking about an investigative detention or whether we're talking about a protective search for officer safety. But the government interest is much different, and the question is much different. The question is whether there's reasonable suspicion to believe that somebody's armed and dangerous versus reasonable suspicion to believe that they are engaged in criminal activity. I understand Your Honor's point, but at the point he pulls him over, he doesn't know he has a firearm. So he doesn't have any basis to really conduct an investigative detention at that point to look for a firearm necessarily, but he would to ensure his and his fellow officers' safety. And the court, in a couple instances, has distinguished between those two inquiries. In one case, in Rice, actually, the defendant argued that Davis, which is an investigative detention case that the defendant cites here, in Rice, the court said, look, we understand your an investigative detention where the concerns about officer safety were attenuated. So just the fact that you knew something about his prior criminal history is a different question when you want to go pick that person up off the street and investigate criminal activity, as it is in the protective search context for officer safety. In that case, it's not attenuated. It's a situation where the officer has to make a split-second decision about how to render the stop safe while the officers conduct the stop. I'm wondering the logic of it. Can you speak to that, maybe, about what, logically, how can the phrase reasonable suspicion, a suspicion is either reasonable or it's not, and if the reasonableness of the suspicion is related to the possibility that the defendant has a gun, I just wonder, I mean, and I don't question the fact that we have cases, you know, distinguishing that line of case law. I just don't understand. I guess I'm grasping for the logic of it in a situation like ours where the underlying dangerousness is predicated on the suspicion of your honor. I do think that there is certainly an intersection, and I think in every one of these cases involves highly individual facts, and that's why the courts have said that rarely is one case going to, in the Fourth Amendment, reasonable suspicion, probable cause context, going to be useful precedent for another. And so I could imagine a scenario where they're highly correlated, dangerousness and an investigative stop, and I think they are correlated in this case, and I take your honor's point that knowing all that Officer Henry does, if he thinks he might be dangerous and have a firearm, he may well have suspicion, whether it's reasonable suspicion by itself with no other factors, or based on the fact of this case, hard to say, but the courts have definitely distinguished between an officer in the field assessing safety as opposed to an officer's, the justification for an officer going out to conduct an investigative detention. In other words, to stop somebody, in this case, there was already a valid stop. The question is whether or not the officers were reasonable in doing this limited non-invasive search just to protect themselves during the pendency of the traffic stop given what they knew about the defendant. I do, unless your honors have any other questions on the dangerousness prong, I see my time's running down a little bit, so I do want to briefly address the access to the vehicle point that the defendant started with. We discussed this in our brief, and I frankly just think it's a novel interpretation of Long that takes a couple of the select quotations out of context. In Long, the court said if a suspect is not placed under arrest, he will be permitted to reenter his circuit. The pre-arrest seizure is reasonable because the probability existed that if no cause for arrest was found, some occupants might be permitted to return. In Palmer, the court said that the defendant would have access to the gun at the conclusion of the encounter, assuming he was only issued a citation and not arrested. The issue is not what ultimately happens. It's at the point that the search is conducted, the protective search is conducted in the traffic stop, the officers don't know what's going to happen. The person may be returned to the vehicle, the person may be arrested. In Palmer, this court noted that the Supreme Court has made clear that this time period that matters is the entire period, quote, from the initial stop to the detainee's departure. It's not some period after the initial stop, after they do some preliminary investigation. The fact that the person is not under arrest when the sweep is conducted is really what matters because if they were under arrest, it wouldn't be justified because they wouldn't be going back to the vehicle. And that's when the search incident to arrest exception would not apply in those circumstances. And Christian was a case that we cited. It's a DC circuit case. And there was a good observation made in that case that the pertinent moment is just before the officers take the protective measure. That's when the court looks. Otherwise, there would be this perverse incentive for the officer to prolong the period during which the arrestee is kept in the area where they could pose a danger to the officers. And that's what would have happened here. If the defendant's argument were credited, the officers would have been required to completely disregard everything they knew about the defendant that could implicate their safety and do some preliminary investigation in an incredibly dangerous situation. And, you know, we think Long's observation that these traffic stops happen at close range, officers have to make quick decisions about how to protect themselves from possible danger. And as the court said, they're not required to adopt alternate means to ensure their safety. And this court has said that it's unreasonable to require police officers to take risks in the performance of their duties. And we think the defendant's argument is novel and also accredited would result in exactly the type of situation that Long and all of the cases following Long sought to avoid. Let me ask you a question. Earlier, you said our review is de novo. Um, I think for historical facts, we defer to the district court and overrule only if it's a clearly erroneous finding. What about a finding such as the defendant could not have gotten back to his car, could not have escaped from the office to get back to the car? Uh, if the judge said that, would we, what's our difference there? Is that a review for clear error? Or is that not a historical fact where we look to general policy concerns or general knowledge about what happens? What's your view on that? And your honor, I see my time's over. If I can go ahead and respond. Yeah, yes. So, and thank you for raising that point. I think it's an important one. Um, the, the district court in this case, your honor was correct that this came up during an exchange during argument during the suppression hearing. And it's important to take these comments and the exchange between the district court and the prosecutor in context. The defendant had been arguing that the fact that, um, Mr. Alexander was outside of the vehicle, separated from the car at that point, he didn't have access period. And we had made the point that that conflated search incident to arrest with a protective suite. And, um, the, the defendant was still maintaining that argument. And so the district court, after having exchanged with the defendant, picked up on that and press the prosecution on that. And eventually we sort of this court's, um, case law and Palmer and Denison and the district. And we quoted some of the passages from those cases and the district court almost immediately said, okay, I'll read those cases carefully, take them under advisement. And then, uh, went back and, and issued an order, uh, consistent with those cases. So I think his comment out of context that factually he could get back to the vehicle, you know, there's no, okay. This is interesting, but that wasn't my question. My question was you're suggesting that the district court changed its mind regarding whether he could return. My question is what if the district court found that he couldn't get back to the car? Do we review that? Uh, DeNovo taking the historical facts found by the court has settled or do review, or is this a fact finding that we review for clear error? I think that that, that comment would be reviewed for clear error, your honor. And I think it would be clearly erroneous based on this court's decisions in, in, uh, Palmer and Denison where people had access to the vehicle for purposes of this inquiry when they were in the back of a patrol car and handcuffs. There's no question that factually in this case, Mr. Alexander was seated right there. And frankly, the protective search happened contemporaneous with him being almost removed from the vehicle. So he was in the process of being moved to the curb, but he wasn't even on the curb yet. And he was right there next to the vehicle. Okay. Thank you. Mr. Hansmeier, I don't know how much time, I think we may have used up your time, but I'm going to give you two minutes for rebuttal. Okay. Thank you. I can just pick up. I want to make a couple of points on this second prong analysis that this idea that the district court. Oh, I'm sorry. You apparently have more than two minutes to start with. So anyway, I apologize. I didn't mean to reduce your time. Excuse me, judge. He was out of time. I was just trying to reset the clock. So I'll just leave it at two minutes. Oh, okay. We should. Okay. Okay. So what, what's the disruption as a factual matter, what the district court says at the hearing is Mr. Alexander, quote, could not at that point, access a weapon end quote, quote. So while officer Henry talking to him factually, he could not have asked any access, any weapon that may have been in the car in quote, that's a factual finding. There's nothing impermissible about that factual finding. When you get to the order, what he says is, quote, Alexander could not have regained access to weapons in the car after being released from the temporary detention of the traffic stop. Those things are not inconsistent. The clock's still not moving. I'll just take, I'm watching the time. Okay. So, so those things aren't inconsistent. What he's saying is that during the stop, he doesn't have access after the stop he does. And what we're saying is that the government's reading, I mean, it's not a novel interpretation. Read judge Hart's. You wrote Palmer. Palmer is very clear. What happened? Look, what you do is you take the guy, you put him in the back seat, you do the warrants check. If it comes out clean, you're going to release him. So you search the car. That's what happened in Palmer. It, that, that, that is not unreasonable. It's, it's just good police work that this idea that you don't, the officers don't know. So therefore they can do a protective search. I mean, think about that in the protective sweep context, this court has emphatically rejected that concept in Nelson and Bagley. We know that a protective Absolutely. No reason why that, that, you know, that reasoning wouldn't apply here. The fact that the officers don't know means they don't know, which means under this court's precedent under long, the government has still never explained how it doesn't read long second requirement out of existence. And I can't articulate how there's any second prong in long after the government. So I think you have a very specific factual case where a district court actually finds he, he can't get to the car during the traffic stop. Very unusual, but it is what it is. And it's not clearly erroneous, erroneous. So the government actually has to lose a case. And I think you may have used up your two minutes. Okay. That's fine. Thanks. Thank you very much, counsel. Case submitted. Counselor excused. Court is adjourned. Could you keep the judges on for a moment, please?